<u>**ORAL ARGUMENT NOT YET SCHEDULED**</u>

<u>**IN THE UNITED STATES COURT OF APPEALS**</u>
<u>**FOR THE DISTRICT OF COLUMBIA CIRCUIT**</u>

Nos. 25-1164; 25-1168

_____

ENVIRONMENTAL DEFENSE FUND, *et al.,*
                                        *Petitioners,*

v.

LEE ZELDIN, *et al.,*
                                        *Respondents.*

_____

Petition for Review of Final Administrative Action of the
United States Environmental Protection Agency

_____

**MOTION FOR SUMMARY VACATUR**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................ ii

INTRODUCTION .......................................................................... 1

BACKGROUND ........................................................................... 3

   I.    The 2024 Rule ...................................................................... 4

   II.   Reconsideration of the 2024 Rule ......................................... 7

   III.   The Challenged Delay Rule ................................................. 8

STANDARD OF REVIEW .............................................................. 10

STANDING ................................................................................ 11

ARGUMENT .............................................................................. 13

   I.    The Delay Rule Violates the Clean Air Act's Procedural Requirements, and EPA Cannot Establish "Good Cause." .................................................. 13

       A. Public Comment is Necessary to Address Significant Health and Environmental Harms. ................................................... 15

       B. EPA's Belated Claims of Impracticability Do Not Constitute Good Cause. ...................................................................... 17

   II.   The Delay Rule Also Violates the Clean Air Act's Limitations on Delays Pending Reconsideration ................................................. 21

CONCLUSION ............................................................................ 23

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT ................. 26

CIRCUIT RULE 26.1 DISCLOSURE STATEMENT ................................. 27

CERTIFICATE OF PARTIES .......................................................... 29

CERTIFICATE OF SERVICE .......................................................... 30

i

# TABLE OF AUTHORITIES

**Cases**

*Air All. Hou. v. EPA*, 906 F.3d 1049 (D.C. Cir. 2018) ..................................... 18, 21

*Air Transp. Ass'n of Am. v. Dep't of Transp.*, 900 F.2d 369
 (D.C. Cir. 1990) ...................................................................................... 19

*Am. Fed'n of Gov't Emp. v. Block*, 655 F.2d 1153 (D.C. Cir. 1981) .............. 14, 18

*Cascade Broad. Group, Ltd. v. FCC,* 822 F.2d 1172 (D.C. Cir. 1987).................... 2

*Clean Air Council v. Pruitt*, 862 F.3d 1 (D.C. Cir. 2017) . ...2, 3, 13, 22, 23, 24, 26,
 27, 28

*Clean Wis. v. EPA*, 964 F.3d 1145 (D.C. Cir. 2020) .............................................. 12

*Env't Def. Fund v. EPA*, 716 F.2d 915 (D.C. Cir. 1983) ...................... 13, 18, 19, 20

*Int'l Dark-Sky Ass'n v. FCC*, 106 F.4th 1206 (D.C. Cir. 2024) .............................. 12

*Jifry v. FAA*, 370 F.3d 1174 (D.C. Cir. 2004) ....................................................... 17

*Mack Trucks v. EPA*, 682 F.3d 87 (D.C. Cir. 2012) ...................... 14, 15, 16, 17, 21

*Nat'l Ass'n of Farmworkers Orgs. v. Marshall*, 628 F.2d 604 (D.C. Cir. 1980) ....20

*NRDC v. EPA*, 643 F.3d 311 (D.C. Cir. 2011) ....................................................... 12

*NRDC v. NHTSA*, 894 F.3d 95 (2d Cir. 2018)........................................................ 18

*NRDC v. Reilly*, 976 F.2d 36 (D.C. Cir. 1992) ...................................................... 22

*NRDC v. Wheeler*, 955 F.3d 68 (D.C. Cir. 2020) .................................................. 12

ii

*Pub. Citizen v. Fed. Motor Carrier Safety Admin.*, 374 F.3d 1209
(D.C. Cir. 2004)..................................................................21

*Sorenson Communs. Inc. v. FCC*, 755 F.3d 702 (D.C. Cir. 2014).........................10

*State of N.J., Dep't of Env't Prot. v. EPA*, 626 F.2d 1038 (D.C. Cir. 1980)...........14

*Union of Concerned Scientists v. Nuclear Regul. Comm'n*, 711 F.2d 370
(D.C. Cir. 1983)..................................................................18

*Util. Solid Waste Activities Grp. v. EPA*, 236 F.3d 749 (D.C. Cir. 2001). .14, 15, 16

**Statutes**

42 U.S.C. § 7411(b)(1)(A)..................................................................8

42 U.S.C. § 7411(b)(1)(B)..................................................................8

42 U.S.C. § 7411(d)..................................................................8

42 U.S.C. § 7607(d) ................................................ 6, 7, 16, 18, 19, 27, 28

5 U.S.C. § 553(b)(B)..................................................................7, 19

**Federal Register Notices**

44 Fed. Reg. 49,222 (Aug. 21, 1979)..................................................................8

50 Fed. Reg. 26,122 (June 24, 1985)..................................................................9

81 Fed. Reg. 35,824 (June 3, 2016)..................................................................9

86 Fed. Reg. 63,110 (Nov. 15, 2021)..................................................................10

87 Fed. Reg. 74,702 (Dec. 6, 2022)..................................................................10

iii

89 Fed. Reg. 16,820 (Mar. 8, 2024)............................................... 6, 9, 10, 11, 15, 22

90 Fed. Reg. 3,734 (Jan. 15, 2025) ..........................................................................13

90 Fed. Reg. 35,966 (July 31, 2025).............. 6, 7, 13, 14, 15, 20, 21, 22, 23, 24, 25

iv

Pursuant to Federal Rule of Appellate Procedure 27 and D.C. Circuit Rule 27, Petitioners move for summary vacatur of the Environmental Protection Agency's ("EPA") *Extension of Deadlines in Standards of Performance for New, Reconstructed, and Modified Sources and Emissions Guidelines for Existing Sources: Oil and Natural Gas Sector Climate Review Final Rule* ("Delay Rule"), 90 Fed. Reg. 35,966 (July 31, 2025) (Att. 1).

## INTRODUCTION

EPA's action substantially delays compliance dates under a final Clean Air Act rule the agency issued in 2024, 89 Fed. Reg. 16,820 (Mar. 8, 2024) ("the 2024 Rule"), which provides critical protections against some of the nation's largest sources of air pollution. The Delay Rule thereby increases harms to public health and damage to the climate—yet does so summarily, without prior notice and public comment as the Clean Air Act and Administrative Procedure Act ("APA") require.

The Delay Rule is blatantly illegal. Changes to implementation dates, like other substantive regulatory amendments, require prior public notice and comment. *See* 42 U.S.C. § 7607(d). EPA has not shown "good cause" for an extraordinary departure from these bedrock rulemaking requirements under the APA. *See* 5 U.S.C. § 553(b)(B). The Delay Rule's belated claims of impracticability run contrary to EPA's own findings in the 2024 Rule that the

1

implementation dates were feasible based upon the record, and in any event do not qualify as good cause. EPA's change of position on these points would have been vigorously contested had the agency allowed for comment—particularly since the 2024 Rule's deadlines were based upon a careful balancing of extensive record evidence regarding technical feasibility, cost, and public health benefits. EPA's reliance on ex parte "conversations with regulated entities" as grounds for the delays, 90 Fed. Reg. at 35,969, only highlights why an opportunity for public comment is needed.

EPA repeatedly asserts that the Delay Rule is warranted to facilitate the agency's review of pending reconsideration petitions. But as such, the Delay Rule is an impermissible end-run around the Clean Air Act's specific provision authorizing a stay pending administrative reconsideration only under limited circumstances: when the conditions of mandatory reconsideration are satisfied and the stay is no more than three months. 42 U.S.C. § 7607(d)(7)(B); *see Clean Air Council v. Pruitt*, 862 F.3d 1, 8 (D.C. Cir. 2017).

Summary vacatur is warranted. EPA's transgression of the most basic requirements of administrative procedure leaves the merits "clear." *See Cascade Broad. Group, Ltd. v. FCC,* 822 F.2d 1172, 1174 (D.C. Cir. 1987); *see also* D.C. Circuit Handbook of Practice and Internal Procedures 36 (rev. Aug. 11, 2025). Indeed, this Court summarily vacated a similar action when EPA sought to delay

application of the immediate predecessor standards for the oil and gas industry without adhering to notice and comment requirements. *Clean Air Council*, 862 F.3d at 14. This latest corner-cutting action should meet the same swift fate.

## BACKGROUND

The Clean Air Act directs EPA to list "categories of stationary sources" that it concludes "cause[], or contribute[] significantly to, air pollution which may reasonably be anticipated to endanger public health or welfare." 42 U.S.C. § 7411(b)(1)(A). For each source category, EPA must prescribe federal "standards of performance" for new, modified, and reconstructed sources. *Id.* at § 7411(b)(1)(B). For certain pollutants, the agency then must issue emission guidelines for existing sources. *Id.* at § 7411(d). These emission guidelines do not regulate existing sources directly but guide each state in submitting to EPA a satisfactory plan to limit existing source emissions in that state. *Id.*

EPA listed the oil and gas source category under Section 7411 in 1979, 44 Fed. Reg. 49,222 (Aug. 21, 1979), and promulgated its first new source standards for volatile organic compounds in 1985, 50 Fed. Reg. 26,122 (June 24, 1985). In 2016, EPA introduced new source standards for methane in the oil and gas source category, 81 Fed. Reg. 35,824 (June 3, 2016), thereby triggering EPA's duty to issue methane emission guidelines for existing sources.

3

**I.     The 2024 Rule**

On March 8, 2024, EPA promulgated a rule strengthening the oil and gas sector's new source standards for methane and volatile organic compounds and establishing emission guidelines for state plans to limit emissions from existing sources. 89 Fed. Reg. at 16,826-27. EPA estimates that between 2024 and 2038, the 2024 Rule will reduce methane, volatile organic compound, and hazardous air pollutant emissions by 58 million, 16 million, and 590 thousand tons, respectively. *Id.* at 16,836. The 2024 Rule achieves these substantial reductions through a combination of standards, including (but not limited to) requirements for operators to undertake enhanced leak detection and repair surveys, install zero-emitting process controllers, and reduce emissions from storage tanks. *Id.* at 16,830-35. Among the standards is also a Super Emitter Program which allows approved third parties to report significant methane leaks. *Id.* at 16,876-81.

Integral to several of these standards are compliance assurance requirements for pollution control devices, including combustion devices, flares, and closed vent systems. In response to evidence demonstrating these devices can malfunction absent performance requirements, *see, e.g.*, 86 Fed. Reg. 63,110, 63,145-46, 63,246 (Nov. 15, 2021), EPA established conditions to ensure that the many standards allowing the use of these devices would achieve optimal and anticipated emission reductions. 89 Fed. Reg. at 16,894-95, 16,898.

4

The standards and compliance assurance requirements apply to both new and existing sources. The compliance deadline for most new sources was May 7, 2024, which has now passed. *Id.* at 16,820. EPA gave operators an additional year to comply with the process controller standard, with a deadline of May 7, 2025. *Id.* at 17,048. That deadline has also passed. The agency also established a state plan submittal deadline of March 9, 2026 and allowed states to give existing sources another three years to achieve full compliance with the standards included in the final plans. *Id.* at 17,141, 17,011.

The 2024 Rule was based upon two rounds of notice and comment over a three-year period. *See* 86 Fed. Reg. 63,110; 87 Fed. Reg. 74,702 (Dec. 6, 2022). During the comment periods, stakeholders (including Petitioners) provided extensive input on—and EPA considered—technical challenges associated with the standards, the anticipated emissions reductions from alternative mitigation technologies, and the cost of mitigation. *Id*. Comments submitted by oil and gas trade groups and companies requested that EPA extend new source compliance deadlines beyond the 60 days upon which the rule would become effective and provide several years for state plan submittal and existing source compliance. In many cases, the agency granted those requests, as reflected here:

5

| Standard | Deadline Request | EPA Response |
|---|---|---|
| Process Controllers* | One to two years.[1] | One year provided.[2] |
| Storage Tanks * | One year for sources that became subject to the rule's requirements between December 2022 and issuance of the final rule.[3] | Responded that changing the applicability date from November 2021 to December 2022 addressed commenters' concerns.[4] |
| Super Emitter Program * | Not requested. | N/A |
| Combustion Devices (including flares) * | One year.[5] | Extended deadlines for affected facilities (e.g., 1 year for process controllers).[6] |
| Closed Vent Systems* | Not requested. | N/A |
| Existing Source Standards* | 5 years for some standards.[7] | 5 years provided for all standards.[8] |
| State Plan Submittal Deadline* | Requests varied from 2-7 years.[9] | 2 years provided.[10] |

\* = deadline extended under Delay Rule

---

[1] *See, e.g.*, AXPC Supplemental Comments, EPA-HQ-OAR-2021-0317-2326 (February 2023) at 6; API Supplemental Comments, EPA-HQ-OAR-2021-0317-1460 (February 2023) at 60-61. All cited comments are available on regulations.gov.

[2] 89 Fed. Reg. at 16,929.

[3] *See, e.g.*, AXPC Supplemental Comments at 5-6.

[4] EPA Response to Comments, EPA-HQ-OAR-2021-0317-4009 at II-13-61 ("RTC").

[5] AXPC Supplemental Comments at 6; API Supplemental Comments at 36.

[6] RTC at II-17-76.

[7] *See, e.g.*, TXOGA Supplemental Comments, EPA-HQ-OAR-2021-0317-220 (February 2023) at 64.

[8] 89 Fed. Reg. at 17,012.

[9] *See, e.g.,* West Virginia et al. Supplemental Comments, EPA-HQ-OAR-2021-0317-1460 at 6 ("[s]tates usually have three years"); RTC at § 19.6.1.

[10] 89 Fed. Reg. at 17,141.

6

Based upon this extensive rulemaking record and engagement with stakeholders, EPA found that operators would be able to meet the specified deadlines.

In April 2024, certain states and industry parties challenged the 2024 Rule. This Court and the Supreme Court denied requests to stay the 2024 Rule pending judicial review. Order, *Texas v. EPA*, No. 24-1054 (D.C. Cir. July 9, 2024) (ECF 2063659); Order, *Oklahoma v. EPA*, No. 24A213 (S.Ct. Oct. 4, 2024).[11]

## II.     Reconsideration of the 2024 Rule

Between April and May of 2024, EPA received multiple petitions for administrative reconsideration of the 2024 Rule, many of which remain pending.[12] These petitions requested that EPA revisit several issues the agency had already addressed during the comment periods. *Id*. Referencing technical and economic challenges, petitioners requested that EPA reconsider the Super Emitter Program and extend compliance deadlines for leak repair requirements, process controllers, storage tanks, and compliance assurance requirements for combustion devices, flares, and closed vent systems. *Id*. EPA granted reconsideration on only two

---

[11] Following a change in presidential administration, the litigation over the 2024 Rule, consolidated as *Texas v. EPA*, No. 24-1054, was placed in abeyance "to allow new Agency leadership to review the underlying rule." EPA, Unopposed Mot. To Hold Case in Abeyance (Doc. 2099414), filed Feb.7 2025); Clerk's Order (Doc. 2099983) (Feb. 11, 2025).

[12] *See, e.g.*, GPA, EPA-HQ-OAR-2024-0358-0013; API/AXPC, EPA-HQ-OAR-2024-0358-0009; Exxon, EPA-HQ-OAR-2024-0358-0012; TXOGA, EPA-HQ-OAR-2024-0358-0016.

issues—(1) net heating value requirements for flares and combustion devices and (2) temporary flaring allowances under the standard for associated gas at oil wells, *see* 90 Fed. Reg. 3,734 (Jan. 15, 2025)—and refrained from taking action on the others. EPA took comment on its reconsideration proposal, which has not been finalized. *Id*.

## III.    The Challenged Delay Rule

In January 2025, President Trump signed Executive Order 14154, "Unleashing American Energy." In response, EPA announced its intention to reconsider the 2024 Rule and to address "short-term compliance concerns."[13] In March 2025, EPA announced it would reconsider the 2024 Rule as part of what the Administrator's press release called the "Biggest Deregulatory Action in U.S. History."[14]

---

[13] *See* EPA, Oil and Gas Regulations: Powering the Great American Comeback Fact Sheet, https://www.epa.gov/system/files/documents/2025-03/oil-and-gas-regulations_powering-the-great-american-comeback_fact-sheet_2.pdf ("Fact Sheet"); *see also* 90 Fed. Reg. at 35,970 n.9.

[14] EPA, EPA Launches Biggest Deregulatory Action in U.S. History (March 12, 2025), https://www.epa.gov/newsreleases/epa-launches-biggest-deregulatory-action-us-history; EPA, Trump EPA Announces OOOO b/c Reconsideration of Biden-Harris Rules Strangling American Energy Producers (March 12, 2025), https://www.epa.gov/newsreleases/trump-epa-announces-oooo-bc-reconsideration-biden-harris-rules-strangling-american.

8

On July 31, 2025, EPA published the Delay Rule. 90 Fed. Reg. 35,966. The Delay Rule extends the new source deadline to January 22, 2027 for the same standards that are at issue in petitions for reconsideration: the Super Emitter Program, leak detection and repair requirements, process controller standards, storage tank standards, and compliance assurance requirements for combustion devices, flares, and closed vent systems. *Id.* at 35,970-79. The Rule also postpones the state plan deadline to January 22, 2027. *Id*. at 35,977.

EPA estimates that the Delay Rule will result in oil and gas facilities emitting 3.8 million tons of methane, 960,000 tons of volatile organic compounds, and 36,000 tons of hazardous air pollution that would have otherwise been avoided between 2028 and 2038.[15] As EPA acknowledges, volatile organic compounds increase ozone pollution, which causes "asthma attacks, hospital and emergency department visits … and premature respiratory mortality," and hazardous air pollutants contribute to cancer and other health risks. EIA at 7-8. Although EPA previously finalized a peer-reviewed report updating methodologies to monetize climate harms[16] and determined the 2024 Rule would prevent $110 billion in

---

[15] EPA, Economic Impact Analysis for the Extension of Deadlines in the NSPS OOOOb and EG OOOOc, at 6 tbl.3 (July 23, 2025), https://www.epa.gov/system/files/documents/2025-07/oil_and_gas_eia_extension_of_deadlines_07-2025.pdf (hereinafter "EIA"); *see also* Fact Sheet at 3.

[16] EPA, Supplementary Material for the Regulatory Impact Analysis for the Final Rulemaking, Standards of Performance for New, Reconstructed, and Modified

9

climate damages, 89 Fed. Reg. at 16,836, in the Delay Rule EPA summarily

declined to assess the climate harms from putting off control requirements, now

claiming too much uncertainty exists to quantify such effects, EIA at 6, 10. *See*

Buma Decl.

      EPA issued the Delay Rule as an Interim Final Rule that took effect

immediately. 90 Fed. Reg. at 35,967. EPA extended the compliance deadlines

"[b]ased on information received in petitions for reconsideration and from ongoing

conversations with regulated entities." *Id.* at 35,969. Citing technical and economic

challenges outlined in petitions for reconsideration,[17] EPA asserted that there was

"good cause" to "forgo [sic] prior notice and comment [under the APA] because

[it] is impracticable and unnecessary under the circumstances." *Id.* at 35,979.

## STANDARD OF REVIEW

      The Clean Air Act authorizes a reviewing court to "reverse" agency action

that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance

with law," or "in excess of statutory jurisdiction, authority, or limitations, or short

of statutory right." 42 U.S.C. § 7607(d)(9)(A), (C). An agency's invocation of

---

Sources and Emissions Guidelines for Existing Sources: Oil and Natural Gas
Sector Climate Review (November 2023),
https://www.regulations.gov/document/EPA-HQ-OAR-2021-0317-4007 ("SC-
GHG Report").

[17] *See, e.g.*, 90 Fed. Reg. at 35,970-71 (combustion devices); *id.* at 35,972 (closed
vent systems); *id.* at 35,973-74 (leaks, process controllers); *id*. at 35,975 (storage
tanks).

good cause is reviewed de novo. *Sorenson Communs. Inc. v. FCC*, 755 F.3d 702, 706 (D.C. Cir. 2014).

This Court "encourage[s]" parties to file motions for summary vacatur "where a sound basis exists for summary disposition." Handbook of Practice and Internal Procedures 36 (rev. Aug. 11, 2025). Summary vacatur "will be granted where the merits of the … petition for review are so clear that 'plenary briefing, oral argument, and the traditional collegiality of the decisional process would not affect [the court's] decision.'" *Cascade Broad. Grp. Ltd.*, 822 F.2d at 1174.

## STANDING

Petitioners have standing to challenge the Delay Rule. Petitioners are national and regional nonprofit groups that advocate for stronger health and environmental protections for their members and the general public.[18] As set forth in detail in the attached declarations,[19] Petitioners' members and their families live, work, and recreate in close proximity to new and existing oil and gas facilities that are subject to the 2024 Rule and the Delay Rule. These facilities emit hazardous air pollutants and volatile organic compounds which contribute to ground-level ozone and cause respiratory illness, cancer, and other health harms for people living near

---

[18] *See* Deville, Grenter, Jones, Magaña, Maher, Michaels, Pagel, Proville-Mirtich, Weiss, Yeung Decls.

[19] *See* Bower-Bjorson, DelBueno, Deville, Graber, Jeffrey, Kuehn, Leach, MacFarlane, McNall, Nichols, Palacios, Ramirez, Richardson, Schreiber, Satrom, Weiss Decls.

11

exposure. Southerland-Weisner Decl. Petitioners' members are harmed by such emissions. *Supra* n.19. Petitioners' members are likewise harmed by the impacts of climate change, *id.*, made worse by methane pollution, Buma Decl.

Petitioners are injured because the Delay Rule extends compliance deadlines for new and existing oil and gas facilities to reduce their emissions, prolonging the health effects of dangerous pollution and climate change for Petitioners' members. *See Clean Wis. v. EPA*, 964 F.3d 1145, 1158 (D.C. Cir. 2020); *NRDC v. Wheeler*, 955 F.3d 68, 77 (D.C. Cir. 2020); *Int'l Dark-Sky Ass'n v. FCC*, 106 F.4th 1206, 1218 (D.C. Cir. 2024). EPA estimates the Rule will significantly increase pollution that would have otherwise been mitigated, *supra* p. 9, and Petitioners' own analysis confirms as much for the delay of both the new and existing-source standards. Proville-Mirtich Decl.

Petitioners and their members are also harmed by EPA's failure to provide the required comment period prior to adopting the Delay Rule. As this Court has held, "the very purpose of [notice and comment] is to give interested parties the opportunity to participate in rulemaking and to ensure that the agency has before it all relevant information." *NRDC v. EPA*, 643 F.3d 311, 321 (D.C. Cir. 2011). Petitioners and their members regularly submit detailed comments on issues relating to Clean Air Act limitations on oil and gas pollution. The lack of notice and comment deprives Petitioners of their ability to influence EPA's decision-

12

making process in a way that better serves the concrete interests of their members. This Court could remedy these injuries by vacating the Delay Rule.

## ARGUMENT

The Delay Rule ignores the fundamental requirements that apply to any revision of a standard of performance under the Clean Air Act. *See* 42 U.S.C. § 7607(d)(1)(C). The altered compliance deadlines are substantive revisions that trigger these requirements. *See, e.g.*, *Clean Air Council*, 862 F.3d at 6 (finding EPA's delay of rule's compliance dates was "tantamount to amending or revoking a rule"); *Env't Def. Fund v. EPA*, 716 F.2d 915, 920 (D.C. Cir. 1983) ("The suspension or delayed implementation of a final regulation normally constitutes substantive rulemaking.").

EPA argues that it has "good cause" to ignore notice and comment requirements, but that argument is foreclosed by this Court's precedent. And despite its plain intent to delay compliance to allow for reconsideration of the 2024 Rule, EPA attempts to circumvent the Act's express limitations on such reconsideration. *See* 42 U.S.C. § 7607(d)(7)(B). The Delay Rule is therefore unlawful and should be summarily vacated.

## I.    The Delay Rule Violates the Clean Air Act's Procedural Requirements, and EPA Cannot Establish "Good Cause."

Before revising a rule, EPA must publish a notice in the Federal Register, provide an opportunity for public comment, and respond "to each of the significant

13

comments, criticisms, and new data submitted … during the comment period." 42 U.S.C. § 7607(d)(1)-(6), (h). The agency must also include "an explanation of the reasons for any major changes in the promulgated rule from the proposed rule." *Id.* § 7607(d)(6)(A). The Delay Rule satisfies none of these requirements.

EPA invokes the APA's good cause exception, which allows an agency to forgo the Clean Air Act's notice and comment rulemaking procedures "when [it] for good cause finds … that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest." 5 U.S.C. § 553(b)(B); *see also* 42 U.S.C. § 7607(d)(1). But this Court has "repeatedly made clear that the good cause exception is to be narrowly construed and only reluctantly countenanced." *Mack Trucks v. EPA*, 682 F.3d 87, 93 (D.C. Cir. 2012) (citation modified); *see also State of N.J., Dep't of Env't Prot. v. EPA*, 626 F.2d 1038, 1045 (D.C. Cir. 1980). "The exception is not an 'escape clause'; its use 'should be limited to emergency situations.'" *Util. Solid Waste Activities Grp. v. EPA*, 236 F.3d 749, 754 (D.C. Cir. 2001) (quoting *Am. Fed'n of Gov't Emp. v. Block*, 655 F.2d 1153, 1156 (D.C. Cir. 1981)); *accord Mack Trucks*, 682 F.3d at 93. The good cause inquiry is "meticulous and demanding," and the Court affords no deference to an agency's assertion of good cause. *Sorenson Commc'ns Inc.,* 755 F.3d at 702, 706.

EPA claims that allowing for public comment prior to issuing the Delay Rule was both unnecessary and impracticable. 90 Fed. Reg. at 35,969. Neither

14

claim is true: public comment is critical before EPA authorizes such substantial health and environmental harms, and there is no emergency here that warrants dispensing with this required procedure. Accepting EPA's rationale under these facts would violate this Court's precedent by rendering the good cause exception a routine "escape clause" rather than an exceptional procedure for emergencies. *Util. Solid Waste Activities Grp.*, 236 F.3d at 754.[20]

### A. Public Comment is Necessary to Address Significant Health and Environmental Harms.

EPA claims that public comment is unnecessary because the agency is making "targeted deadline revisions" that do not "unreasonably frustrate" the ultimate emission reductions of the 2024 Rule. 90 Fed. Reg. at 35,979. But that is not the relevant test. The "unnecessary" prong of the good cause exception is "confined to those situations in which the administrative rule is a routine determination, insignificant in nature and impact, and inconsequential to the industry and to the public." *Mack Trucks*, 682 F.3d at 94 (quoting *Util. Solid Waste Activities Grp.*, 236 F.3d at 755). That is plainly not the case here.

The Delay Rule extends deadlines for core requirements of the 2024 Rule as well as compliance assurance requirements that will affect multiple standards. And

---

[20] Indeed, in July alone, EPA relied on the good cause exception to revise Clean Air Act rule deadlines at least three other times. *See* 90 Fed. Reg. 28,904 (July 2, 2025); 90 Fed. Reg. 29,997 (July 8, 2025); 90 Fed. Reg. 29,485 (July 3, 2025).

15

contrary to EPA's unsupported claim that its "targeted changes" "do not interfere with" the emission reductions of the rule, 90 Fed. Reg. at 35,979, EPA itself acknowledges the vast increase in pollution and health harms the Delay Rule will cause, *see supra* p. 9. Likewise, EPA believes the rule *is* significant to industry and states—it is extending numerous compliance deadlines precisely to alleviate alleged impacts. *See* 90 Fed. Reg. at 35,969. The risks to public health and EPA's own admissions demonstrate that the Delay Rule is "far from inconsequential." *Mack Trucks*, 682 F.3d at 94.

Prior public comment is also required because members of the public are "greatly interested" in the Delay Rule. *Util. Solid Waste Activities Grp.*, 236 F.3d at 755. Delaying pollution controls on one of the nation's highest-emitting industries implicates critical public interests in protecting human health and preventing millions of additional tons of extremely potent near-term climate pollutants. *See* Buma Decl. EPA received nearly one million public comments on the 2024 Rule, including extensive comments from industry and the public alike concerning the appropriate standards and compliance deadlines. 89 Fed. Reg. at 16,824; *see also, e.g.*, 90 Fed. Reg. at 35,974. EPA should expect similar interest in revisions to those deadlines.

The Delay Rule also reverses course on an issue of great public interest: after finalizing a peer-reviewed report that updated methodologies to monetize

16

climate change impacts and applying those updates to the 2024 Rule, EPA suddenly changed course and determined—without any public input—that there is too much uncertainty to monetize such harms. *See supra* p. 9. This precise issue was the subject of extensive notice and comment in the 2024 Rule, *see* SC-GHG Report at 3 n.1, demonstrating its importance to the public.

To the extent EPA believes its post-hoc comment period renders prior public comment unnecessary, it is incorrect: "post-promulgation notice and comment procedures [do not] cure the failure to follow [them] in the first instance," *see NRDC v. NHTSA*, 894 F.3d 95, 115 (2d Cir. 2018), even for rules of a "'limited'" or "interim nature." *see Mack Trucks*, 682 F.3d at 94 (citation omitted).

## B.    EPA's Belated Claims of Impracticability Do Not Constitute Good Cause.

EPA also claims that notice and comment is impracticable, pointing to alleged difficulties that regulated entities will have complying with deadlines under the 2024 Rule as cited in their reconsideration petitions. 90 Fed. Reg. at 35,980. But the good cause exception is limited to "emergency situations, or where delay could result in serious harm." *Jifry v. FAA*, 370 F.3d 1174, 1179 (D.C. Cir. 2004) (cleaned up); *Mack Trucks*, 682 F.3d at 93 (noting good cause exception is available where there is an "imminent threat to the environment or safety or national security" but not to protect one company's "bottom line").

17

EPA's professed concerns about compliance deadlines do not rise to the level of an emergency under this Court's precedent. *EDF*, 716 F.2d at 921 ("[A]lleged pressing need to avoid industry compliance with regulations … falls outside the scope of the good cause exception."). A "reluctance to place [oil and gas facilities] in jeopardy of enforcement action" is "insufficient" to constitute good cause. *Union of Concerned Scientists v. Nuclear Regul. Comm'n*, 711 F.2d 370, 382 (D.C. Cir. 1983). Just because "a regulated entity might prefer different regulations that are easier or less costly to comply with does not justify dispensing with notice and comment." *NRDC v. NHTSA,* F.3d at 115; *cf. Air All. Hou. v. EPA*, 906 F.3d 1049, 1057 (D.C. Cir. 2018) (striking down delay rule despite EPA's concern about "imposing the rule's substantial compliance and implementation resource burden" on industry pending administrative reconsideration).

Nor has EPA identified any imminent harm—much less the "serious harm" this Court requires to avoid public involvement. For example, the deadline for states to issue implementation plans for existing sources is still eight months away (March 2026), and EPA has made no showing that it cannot provide an opportunity for public comment prior to that deadline. An agency cannot claim good cause where it has "a substantial period of time within which to prepare regulations." *Am. Fed'n of Gov't Emp.,* 655 F.2d at 1158. Although EPA spends pages detailing unsupported allegations that states are struggling to meet the March 2026 deadline,

18

90 Fed. Reg. at 35,977-79, the Delay Rule contains no claim that eight months is insufficient time to receive comments, which would likely include important input from the relevant states.[21]

EPA's justification for the new source standards fails because of the inverse problem: all of the compliance deadlines for new sources have already passed—yet EPA has not identified any resulting harm that companies have suffered that would be alleviated by forgoing public comment. The agency primarily relies on industry concerns detailed in their April-May 2024 petitions for reconsideration, but it makes no showing that those concerns have materialized and led to serious harm. In fact, the 2024 Rule provided the deadlines originally requested by oil and gas trade groups in their comments on the proposal. *See supra* p. 6.

Besides the lack of serious harm, EPA also cannot claim impracticability because it had over a year to address the alleged compliance challenges it now cites as good cause. An agency cannot "simply wait until the eve of a[] … deadline, then raise up the 'good cause' banner and promulgate rules without following [statutory] procedures." *EDF,* 716 F.2d at 921 (cleaned up); *see also Air Transp. Ass'n of Am. v. Dep't of Transp.*, 900 F.2d 369, 379 (D.C. Cir. 1990) (holding agency could not rely on the good cause exception where its "own failure

---

[21] Colorado, for example, has made significant progress in developing a state plan. *See* Nichols Decl. ¶ 19.

to act materially contributed to its perceived deadline pressure"), *vacated on other grounds*, 498 U.S. 1077 (1991).

Here, EPA waited more than 16 months after finalizing the 2024 Rule in March 2024 to issue the Delay Rule. As a result, both the May 2024 deadlines (which apply to most new sources) and the May 2025 deadline (which apply to process controllers) have long since passed. The Delay Rule also makes clear that its changes are based on "information received in petitions for reconsideration" that stakeholders submitted to EPA no later than May 2024. 90 Fed. Reg. at 35,969; *see supra* p. 10. EPA began formally reconsidering a subset of these issues as early as May 2024.[22] EPA cannot manufacture impracticability as it has here, more than a year after the initial rule's promulgation. *Nat'l Ass'n of Farmworkers Orgs. v. Marshall*, 628 F.2d 604, 622 (D.C. Cir. 1980) (rejecting agency's claim of good cause where agency waited nearly seven months before modifying a rule). Because any "alleged 'emergency' ar[ose] as the result of [the] agency's own delay," EPA cannot rely on the good cause exception. *EDF,* 716 F.2d at 921 (citation omitted).

\* \* \*

---

[22] *See supra* p. 7; Letter from EPA Deputy Assistant Adm'r for Stationary Sources, to Am. Petroleum Inst. & Am. Expl. & Prod. Council (May 6, 2024), https://www.epa.gov/system/files/documents/2024-05/letter-to-api-and-apx.-5.6.24-signed_1.pdf.

Summary vacatur is appropriate because EPA has not come close to meeting its heavy burden to show good cause; on the contrary, its arguments are squarely foreclosed by this Court's precedent. *See Mack Trucks*, 682 F.3d at 95 ("Because EPA lacked good cause to dispense with required notice and comment procedures, we conclude the I[nterim] F[inal] R[ule] must be vacated").

## II.    The Delay Rule Also Violates the Clean Air Act's Limitations on Delays Pending Reconsideration.

Although the absence of good cause is dispositive, the Delay Rule is independently unlawful because it relies on reconsideration of the 2024 Rule as the sole justification for the compliance deadline delays without satisfying the Clean Air Act's "statutorily mandated factor[s]" for staying a rule pending reconsideration. *Pub. Citizen v. Fed. Motor Carrier Safety Admin.*, 374 F.3d 1209, 1216 (D.C. Cir. 2004); 42 U.S.C. § 7607(d)(7)(B).

EPA asserts that "the purpose" of the rule "is to provide the immediate extension required to address the problems identified [in petitions for reconsideration]." 90 Fed Reg. at 35,980. Because the Delay Rule is a "direct outgrowth" of a process to reconsider the 2024 Rule, it is the "functional equivalent of a stay" pending reconsideration under the Clean Air Act, 42 U.S.C. § 7607(d)(7)(B), and the Act's limitations apply. *Air All. Hou.,* 906 F.3d at 1061-63 (rejecting EPA's invocation of a separate stay authority when it was "indisputably responding to a [42 U.S.C §] 7607(d)(7)(B) petition and reconsidering a rule under

21

that specific provision"); *see also Clean Air Council*, 862 F.3d at 9 (holding stay

pending reconsideration is governed by section 7607(d)(7)(B)); *NRDC v. Reilly*,

976 F.2d 36, 38 (D.C. Cir. 1992) (holding that section 7607(d)(7)(B)'s limitations

applied despite invocation of a separate stay authority where "the stays …

represented a continuation of the reconsideration process").

But EPA cannot rely on the Clean Air Act's reconsideration provision to

issue a stay of the deadlines, as the agency did not cite that authority when it issued

the Delay Rule. *See Clean Air Council*, 862 F.3d at 9. Furthermore, the Delay Rule

exceeds the Clean Air Act's express statutory limitations on reconsideration in

several regards. First, the Act permits a stay only if the Delay Rule meets the

conditions for mandatory reconsideration, which is not the case here. *Id.*; 42 U.S.C.

§ 7607(d)(7)(B). Mandatory reconsideration is limited to issues that were

"impracticable to raise" during the public comment period. *Id*. § 7607(d)(7)(B).

Concerns over the technical and economic feasibility of achieving standards by

certain compliance deadlines were not impracticable to raise—and in fact *were*

raised—during the 2024 Rule's comment periods. *See supra* p. 6. Even more, in

almost every case for the standards at issue in the Delay Rule, EPA established

compliance dates for both new and existing sources in accord with timelines

expressly sought by the regulated industry *during the comment periods on the 2024*

*Rule*. *See supra* p. 6. "The administrative record thus makes clear that industry

22

groups had ample opportunity to comment" on issues presented in the petitions for reconsideration, and that "in several instances the agency incorporated those comments directly into the final rule." *Clean Air Council*, 862 F.3d at 14. Second, the Clean Air Act requires EPA to "provide the same procedural rights as would have been afforded had the information been available at the time the rule was proposed," 42 U.S.C. § 7607(d)(7)(B)—*i.e.*, EPA must provide for prior public notice and comment, which the Delay Rule did not afford. Finally, stays pending reconsideration under section 7607(d)(7)(B) may not exceed three months, *id.*— much less than the postponements provided by the Delay Rule.

Therefore, just as in *Clean Air Council*, 862 F.3d at 14, summary vacatur is warranted here because the Delay Rule does not meet the statutorily mandated factors to stay a rule pending reconsideration.

## CONCLUSION

For the foregoing reasons, the Court should vacate the Delay Rule.

23

DATED: August 18, 2025

Respectfully submitted,

*/s/ Margaret A. Coulter*
Margaret A. Coulter
Jason C. Rylander
Center for Biological Diversity
1411 K Street NW, Suite 1300
Washington, D.C. 20005
(202) 961-4820
mcoulter@biologicaldiversity.org
jrylander@biologicaldiversity.org

*Counsel for Center for Biological Diversity*

*/s/ Mary Y. Sasso*
Mary Y. Sasso
Darin Schroeder
Francis W. Sturges, Jr.
Clean Air Task Force
114 State St., 6th Floor
Boston, MA 02109
(617) 624-0234
msasso@catf.us
dschroeder@catf.us
fsturges@catf.us

*Counsel for Earthworks*

*/s/ Wendy Bloom*
Wendy Bloom
Environmental Law & Policy Center
35 East Wacker Drive, Suite 1600
Chicago, IL 60601
(312) 673-6500
wbloom@elpc.org

*Counsel for Environmental Law & Policy Center*

*/s/ Grace M. Smith*
Grace M. Smith
Edwin LaMair
Rosalie Winn
Peter Zalzal
Vickie Patton
Environmental Defense Fund
2060 Broadway, Ste. 300
Boulder, CO 80302
(303) 447-7560
gsmith@edf.org
elamair@edf.org
rwinn@edf.org
pzalzal@edf.org
vpatton@edf.org

Sean H. Donahue
Keri R. Davidson*
Donahue, Goldberg & Herzog
1008 Pennsylvania Ave., SE
Washington, D.C. 20003
(202) 277-7085
sean@donahuegoldberg.com
*Not admitted in District of Columbia.

*Counsel for Environmental Defense Fund*

*/s/ Alexandra O. Schluntz*
Alexandra O. Schluntz
Robin Cooley
Earthjustice
633 17th Street #1600
Denver, CO 80202
(303) 996-9612
aschluntz@earthjustice.org
rcooley@earthjustice.org

*/s/ Meredith Hankins*
Meredith Hankins
David Doniger
Natural Resources Defense Council
1152 15th Street, NW, Suite 300
Washington, D.C. 20005
(646) 448-3818
mhankins@nrdc.org

*Counsel for Natural Resources
Defense Council*

*Counsel for Clean Air Council, Dakota
Resource Council, Food & Water
Watch, Fort Berthold Protectors of
Water & Earth Rights, and
GreenLatinos*

*/s/ Andres Restrepo*
Andres Restrepo
Sierra Club
50 F St., NW, Eighth Floor
Washington, D.C. 20001
(856) 240-0964
Andres.Restrepo@sierraclub.org

*Counsel for Sierra Club*

25

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), counsel hereby certifies that the foregoing Motion for Summary Disposition and Vacatur contains 5,149 words, as counted by counsel's word processing system, and thus complies with the 5,200-word limit. See Fed. R. App. P. 27(d)(2)(A).

Further, this document complies with the typeface and type-style requirements of the Federal Rules of Appellate Procedure, 32(a)(5) and (a)(6), because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 using size 14 Times New Roman font.

Dated: August 18, 2025

*/s/ Grace M. Smith*
Grace M. Smith

26

## CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure and D.C. Circuit Rule 26.1,

Movants Environmental Defense Fund, Clean Air Council, Center for Biological

Diversity, Dakota Resource Council, Earthworks, Environmental Law & Policy

Center, Food & Water Watch, Fort Berthold Protectors of Water & Earth Rights,

GreenLatinos, Natural Resources Defense Council, and Sierra Club state that they

are non-profit environmental organizations without any parent corporation or

stock.

DATED: August 18, 2025                     Respectfully submitted,

*/s/ Margaret A. Coulter*                  */s/ Grace M. Smith*
Margaret A. Coulter                        Grace M. Smith
Jason C. Rylander                          Edwin LaMair
Center for Biological Diversity            Rosalie Winn
1411 K Street NW, Suite 1300               Peter Zalzal
Washington, D.C. 20005                     Vickie Patton
(202) 961-4820                             Environmental Defense Fund
mcoulter@biologicaldiversity.org           2060 Broadway, Ste. 300
jrylander@biologicaldiversity.org          Boulder, CO 80302
                                           (303) 447-7560
*Counsel for Center for Biological*        gsmith@edf.org
*Diversity*                                elamair@edf.org
                                           rwinn@edf.org
                                           pzalzal@edf.org
                                           vpatton@edf.org

27

*/s/ Mary Y. Sasso*
Mary Y. Sasso
Darin Schroeder
Francis W. Sturges, Jr.
Clean Air Task Force
114 State St., 6th Floor
Boston, MA 02109
(617) 624-0234
msasso@catf.us
dschroeder@catf.us
fsturges@catf.us

*Counsel for Earthworks*

*/s/ Wendy Bloom*
Wendy Bloom
Environmental Law & Policy Center
35 East Wacker Drive, Suite 1600
Chicago, IL 60601
(312) 673-6500
wbloom@elpc.org

*Counsel for Environmental Law & Policy Center*

*/s/ Meredith Hankins*
Meredith Hankins
David Doniger
Natural Resources Defense Council
1152 15th Street, NW, Suite 300
Washington, D.C. 20005
(646) 448-3818
mhankins@nrdc.org

*Counsel for Natural Resources Defense Council*

Sean H. Donahue
Keri R. Davidson*
Donahue, Goldberg & Herzog
1008 Pennsylvania Ave., SE
Washington, D.C. 20003
(202) 277-7085
sean@donahuegoldberg.com
*Not admitted in District of Columbia.

*Counsel for Environmental Defense Fund*

*/s/ Alexandra O. Schluntz*
Alexandra O. Schluntz
Robin Cooley
Earthjustice
633 17th Street #1600
Denver, CO 80202
(303) 996-9612
aschluntz@earthjustice.org
rcooley@earthjustice.org

*Counsel for Clean Air Council, Dakota Resource Council, Food & Water Watch, Fort Berthold Protectors of Water & Earth Rights, and GreenLatinos*

*/s/ Andres Restrepo*
Andres Restrepo
Sierra Club
50 F St., NW, Eighth Floor
Washington, D.C. 20001
(856) 240-0964
Andres.Restrepo@sierraclub.org

*Counsel for Sierra Club*

28

## CERTIFICATE OF PARTIES

Pursuant to D.C. Circuit Rules 27(a)(4) and 28(a)(1)(A), I certify that the parties to this case are set forth below.

Petitioners: Petitioners in this case are Environmental Defense Fund, Clean Air Council, Center for Biological Diversity, Dakota Resource Council, Earthworks, Environmental Law & Policy Center, Food & Water Watch, Fort Berthold Protectors of Water & Earth Rights, GreenLatinos, Natural Resources Defense Council, and Sierra Club.

Respondents: Respondents in this case are the United States Environmental Protection Agency ("EPA") and Lee Zeldin, in his official capacity as Administrator of the EPA.

Intervenors: None at present.

Amici Curiae: None at present.

Dated: August 18, 2025

*/s/ Grace M. Smith*
Grace M. Smith

29

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of August, 2025, I filed the foregoing

motion on Respondents with the Court's CMS/ECF system, which will notify

counsel of record.

*/s/ Grace M. Smith*
Grace M. Smith